United States District Court
Middle District of Florida
Jacksonville Division

JAXMA GREENHOUSES, INC.

     **Plaintiff,**

**v.**                        **NO. 3:21-cv-444-MMH-LLL**

THOMAS J. VILSACK, SECRETARY,
UNITED STATES DEPARTMENT OF
AGRICULTURE; FRANK M. WOOD,
DIRECTOR, NATIONAL APPEALS DIVISION,

     **Defendants.**

_____

### Report and Recommendation
### Denying Motion for Summary Judgment and
### Granting Defendants' Request to Enter Judgment in Their Favor

Before the Court is plaintiff Jaxma Greenhouse, Inc.'s Motion for Summary Judgment, doc. 28. Defendants Thomas J. Vilsack, Secretary of the United States Department of Agriculture (USDA), and Frank M. Wood, Director of the National Appeals Division of the USDA, oppose the motion and ask the Court to enter judgment in the defendants' favor, doc. 33. Jaxma filed a reply, doc. 35. The matter was referred to me for the issuance of a report and recommendation for the appropriate resolution of the motion, doc. 36. I respectfully recommend that plaintiff's motion for summary judgment be denied, and judgment entered for the defendants.

Jaxma sues seeking a review of the USDA's National Appeals Division's final determination, denying Jaxma's request for fees and costs under the Equal Access to Justice Act (EAJA). Doc. 1. Jaxma invokes the Court's jurisdiction under 28 U.S.C. § 1331, 7 U.S.C. § 6999, 5 U.S.C. §§ 701-706, and 7 C.F.R. § 11.13, doc. 1 ¶¶ 4-5.

## Background

The facts are undisputed. Jaxma is a large-scale orchid greenhouse based in Jacksonville, Florida; the owner and founder of the company is Shung Kim. Doc. 1 ¶ 7, A.R. 69.[1] As is typical practice in the industry, Jaxma bought an insurance policy through the Federal Crop Insurance Program to cover its crop from June 1, 2015 through May 31, 2016, doc. 1 ¶ 8, A.R. 69. In June 2016, Jaxma filed a loss claim with the insurer because "a significant portion" of its orchid crop tested positive for two viruses, doc. 1 ¶ 9, resulting in a "total loss" of Jaxma's orchids, A.R. 69. The USDA Risk Management Agency (Risk Agency)[2] was notified of the claim and participated in the claim settlement process, docs. 1 ¶ 9, 33 at 2. The Risk Agency concluded that Jaxma qualified for only part of its losses, a determination adverse to Jaxma. *See* doc. 28 ¶ 2, A.R. 69. Jaxma then appealed the Risk Agency's decision, which was ultimately reversed, and a decision was entered in favor of Jaxma. Docs. 1 ¶ 10, 28 ¶ 3, A.R. 69.

---

[1] I use "A.R." to denote references to the administrative record, which was filed with the Court on December 3, 2021, doc. 27-1.

[2] According to defendants, the Risk Agency "acts as a reinsurer to private insurance companies." Doc. 33 at 2 (citing 7 U.S.C. § 1508).

In November 2019, Jaxma, as the prevailing party in its dispute with the Risk Agency, applied to the National Appeals Division (NAD) for attorneys' fees and costs under the EAJA, 5 U.S.C. § 504 and 7 C.F.R. § 1.180 et seq., A.R. 6-9. The NAD oversees appeals and related matters, such as EAJA fee requests, from decisions of agencies within the USDA, including the Risk Agency; it uses a multi-tiered review process. The first stop for Jaxma's EAJA application was a review by an adjudicative officer of the NAD. The Risk Agency opposed Jaxma's EAJA application.

Jaxma requested $21,164.50 in attorneys' fees and $708.56 in expenses. A.R. 8, 11-12. Jaxma submitted a "net worth exhibit" in support of its EAJA application (first exhibit), A.R. 22. The Regulations outline what is required in a net worth exhibit:

> An applicant, except a qualified tax-exempt organization or cooperative association, must provide with its application a detailed exhibit showing the net worth of the applicant and any affiliates (as defined in § 1.184 of this part) when the proceeding was initiated. The exhibit may be in any form convenient to the applicant that provides full disclosure of the applicant's and its affiliates' assets and liabilities and is sufficient to determine whether the applicant qualifies under the standards in this subpart. The adjudicative officer may require an applicant to file additional information to determine its eligibility for an award.

7 C.F.R. § 1.191(a). The first exhibit was dated November 6, 2019, and consisted of the sworn declaration of Sonnie Kim, the general manager of Jaxma on the date the appeal was filed. A.R. 22.[3] The exhibit included the following financial information, declared by Sonnie Kim to be true and correct:

---

[3] Sonnie Kim's declaration was made under penalty of perjury. AR. 22.

2. Outside of the sole owner of Jaxma, Shung Kim, Jaxma does not have any affiliates as that term is defined in 7 C.F.R. § 1.185(d)(3).

3. As of August [*sic.*] June 27, 2017,[4] the date the NAD appeal was filed, Jaxma had fewer than 500 employees.

4. As of June 27, 2017, the date the NAD Appeal was filed, the assets and liabilities for Jaxma, aggregated with its affiliates, was follows:

| Name | Assets | Liabilities |
|------|--------|-------------|
| Jaxma | $2,917,460 | $664,611.46 |
| Shung Kim | $492,000 | $130,000.00 |
| **Total** | $3,409,460 | $794,611.46 |

A.R. 22. Sonnie Kim then concluded that "[b]ased on Jaxma's assets and liabilities, aggregated with the assets and liabilities of its affiliates, as of June 27, 2017, Jaxma's net worth was $2,614,848.54, which is well under the $ 7 million cap . . . in 7 C.F.R. § 1.185(b)(5) . . . " A.R. 22.

The Risk Agency answered Jaxma's EAJA application, alleging Jaxma was "not entitled to the requested or any fees whatsoever" because the application was "legally insufficient." A.R. 92. It objected to several aspects of Jaxma's application. First, it argued Jaxma failed to provide a balance sheet or submit any documents supporting its recitation of its assets and liabilities, Shung Kim's assets and liabilities, or its claim that Shung Kim was Jaxma's only affiliate, A.R. 96-97. The Risk Agency also complained that Jaxma's EAJA application did not identify the number of

---

[4] The June 27, 2017 date of appeal cited in the exhibits and throughout this report and recommendation refers to Jaxma's successful appeal of the adverse determination of the Risk Agency.

4

employees or provide any supporting documentation about the employees, *id.* In support of its position, the Risk Agency attached the 2020 Florida Profit Corporation Annual Report, dated January 29, 2020, which revealed Jaxma had registered four officers or directors, in addition to Shung Kim, A.R. 101.

Jaxma replied, A.R. 36-66, arguing the first exhibit, "satisf[ied] the lenient standard of 7 C.F.R. § 1.91(a)" because it contained a sworn declaration that listed assets, liabilities, affiliates, and number of employees. A.R. 36-38. It complained the Risk Agency was holding Jaxma to a burden not required under the law, forcing Jaxma to submit to overly intrusive financial accounting against the spirit of the EAJA. A.R. 38-39.

In response to Jaxma's reply, the NAD adjudicative officer issued a "Notice of Further Proceedings Pursuant to 7 C.F.R. § 1.199," which directed the parties to submit additional materials. A.R. 25-26. The notice explained that "[a]lthough [Jaxma] submitted a reply to [the Risk] Agency's answer, its reply did not include any supporting evidence in response to [the Risk] Agency's arguments." A.R. 25. The adjudicative officer then informed the parties she would order further proceedings to allow Jaxma to show it met the requirements of 7 C.F.R. § 1.184(b), specifying Jaxma should "supply supporting documentation, such as a sworn letter or affidavit from an accountant that includes a list of the applicant's assets and liabilities as of the date it submitted its initial NAD appeal. [Jaxma] should also supply the number of its employees as of that date." A.R. 25.

Jaxma then submitted a "supplemental net worth exhibit" dated April 26, 2020 (second exhibit), A.R. 77. The second exhibit consisted of two documents: another sworn statement by Sonnie Kim reiterating that Shung Kim was Jaxma's only affiliate as defined under § 1.184(d)(3), but this time listing Shung Kim's net worth as $445,000 and Jaxma's net worth as $2,088,272, for a total of $2,533,272[5] and a letter from an accountant. The letter was unsworn and consisted of two sentences; it stated that the accountant was the tax preparer for Jaxma and Shung Kim, and "[b]ased on their tax return for the period ending June 27, 2017, Jaxma Greenhouse has a net worth of $2,088,272 and Shung Kim $445,000 for a total net worth of $2,533,272." A.R. 78. The second exhibit did not explain the discrepancies in net worth between the first and second exhibits. Moreover, the second exhibit did not break down assets and liabilities, nor did it include any supporting documentation or other information as to the basis of the net worth representation. *Id.*

On June 22, 2020, the adjudicative officer issued the "Equal Access to Justice Determination," A.R. 69-73, finding Jaxma "did not meet its burden of showing its net worth was less than $7 million at the time the action was filed." A.R. 71. The adjudicative officer explained that "when there is a question about eligibility, 'a conclusory affidavit without supporting evidence is inadequate' to establish net worth for EAJA eligibility, and the applicant '*must* present sufficient evidence so that his or her net worth may be ascertained and verified by the court.'" A.R. 71 (citing *Fields vs.*

---

[5] There was a $81,576.54 difference in Jaxma's total net worth between the two exhibits.

6

*United States*, 29 Fed. Cl. 376, 382 (1993) (emphasis in original), *aff'd* by 64 F.3d 676 (Fed. Cir. 1995). The adjudicative officer also noted that Jaxma failed to provide documentation supporting its EAJA application even after it was "specifically requested that [Jaxma] supply supporting documentation, such as a sworn letter or affidavit from an accountant that includes a list of [Jaxma's] assets and liabilities as of the date it submitted its initial NAD appeal[.]" A.R. 71. The officer continued,

> [d]espite being provided with multiple opportunities to supplement the record with supporting documentation to show it met the EAJA net worth requirement, [Jaxma] chose not to. When challenged as to eligibility for an EAJA award, the party seeking such an award must do more than make a bare assertion that it meets the statutory criteria. . . I find that [Jaxma] has only made bare assertions that it meets the statutory criteria in this instance.

*Id.*

Jaxma appealed to NAD Director Defendant Wood. A.R. 79-89. Jaxma requested Defendant Wood review the EAJA determination by the adjudicative officer, under 7 C.F.R. § 1.201 and 7 C.F.R. § 11.9. A.R. 75-89.[6] In a December 14, 2020 decision (the Determination), Defendant Wood upheld the adjudicative officer's determination that Jaxma did not meet the net worth requirement under the EAJA. A.R. 225-31.

---

[6] The Risk Agency did not file a response to Jaxma's request for Director review, *see* A.R. at 229.

Jaxma then requested Defendant Wood reconsider the Determination, A.R. 234-40; but on March 24, 2021, he declined and issued the NAD's third and final decision, again incorporating and standing by his analysis and findings in the Determination as a basis for denial. A.R. 247-50. This denial rendered the Determination a final agency action. Doc. 28 at 9.[7]

Jaxma then filed this lawsuit, doc. 1, and asks the Court to conclude that the Determination violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06 because it was "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the applicable statutes and regulations." Doc. 28 at 4. Jaxma also asks the Court to grant "injunctive relief against [the] NAD compelling it to withdraw the Determination, and direct that the EAJA application proceed in accordance with the applicable statutes and regulations." *Id. See also* doc. 1 ¶¶ 1-4.

## Authority

### A. The Administrative Procedure Act

Under the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But when the case involves the

---

[7] Although the parties, at times refer to the second (the Determination) and third levels (denial of request for reconsideration) interchangeably, it is the second decision, the Determination, Jaxma argues was improper and contrary to law; and it is this same decision that Jaxma moves to declare unlawful and set aside as "arbitrary, capricious, an abuse of discretion, and not in accordance with the applicable statutes and regulations." Doc. 28 at 4. I thus review the Determination against the APA standards.

review of an agency's action under the APA, "the district judge sits as an appellate tribunal, and the entire case on review is a question of law." *Brinklys v. Johnson*, 175 F. Supp. 3d 1339, 1349 (M.D. Fla. 2016) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)), *aff'd sub nom. Brinklys v. Sec'y, Dep't of Homeland Sec.*, 702 F. App'x 856 (11th Cir. 2017). Therefore, the traditional Rule 56 analysis does not apply; instead, the question for a court's determination is "whether as a matter of law[,] the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Id.* at 1350 (quoting *CS-360, LLC v. U.S. Dep't of Veterans Affairs*, 101 F. Supp. 3d 29, 32 (D.D.C. 2015) (internal quotation marks omitted)).

Jaxma argues that the Determination is "arbitrary, capricious, and against the weight of the evidence because—despite all the evidence presented falling on Jaxma's side of the scale—[Defendant Wood] affirmed the Administrative Judge's factual determination that Jaxma did not meet its burden of showing that it met the EAJA net worth requirement." Doc. 28 at 10. The APA provides that "[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" 5 U.S.C. § 706(2)(A). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S.Ct. 1150, 1158 (2021). Thus, "a court may not substitute its own policy judgment for that of the agency. A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the

9

relevant issues and reasonably explained the decision." *Id.* (additional citations omitted). *See also Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009) (internal citations and quotation marks omitted) ("[T]he arbitrary and capricious standard is exceedingly deferential[,]" and explaining that if the agency determination is rational, it will be upheld).

Instead, the judicial role is to ask, "whether the agency examined the relevant data and articulated a satisfactory explanation for its action." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1288 (11th Cir. 2015) (internal quotation marks omitted). Agency actions and conclusions may be found arbitrary and capricious "where the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that could not be ascribed to a difference in view or the product of agency expertise." *Miccosukee Tribe*, 566 F.3d at 1264 (11th Cir. 2009) (internal citation and quotation marks omitted)).

The Court must also consider whether the Determination is unsupported by substantial evidence in the record. 5 U.S.C. § 706(2)(E). *See* docs. 33 at 10, 35 at 2-3. The analysis under the substantial evidence test found in § 706(2)(E) is similar to that under the arbitrary-and-capricious standard. *Brinklys*, 175 F. Supp. 3d at 1350 n.4 (citations omitted) (explaining there is no practical difference between the substantial evidence and arbitrary-and-capricious standards when applied to an agency's factual findings). The Supreme Court has explained that the APA's "substantial evidence"

test "as requiring a court to ask whether a 'reasonable mind might accept' a particular evidentiary record as 'adequate to support a conclusion.'" *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Dekalb Cnty. v. U.S. Dep't of Lab.*, 812 F.3d 1015, 1020 (11th Cir. 2016) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

Deference is not a rubber stamp, however, and the Supreme Court has stressed that the APA contemplates "meaningful review." *Zurko*, 527 U.S. at 162 (citation omitted). But "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1996) (citations omitted). A court must review the "whole record" or those parts of it cited by a party. 5 U.S.C. § 706. A "whole record" review in this context means "the full administrative record that was before the [agency] at the time [the decision was made]." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Saunders*, 430 U.S. 99 (1977).

## B. The Equal Access to Justice Act

The EAJA allows prevailing parties in certain administrative proceedings to recover attorneys' fees and costs from the United States. *Ardestani v. I.N.S.*, 502 U.S. 129, 132 (1991). Its specific purpose is to abolish the financial hardship for the average

person challenging unreasonable government actions. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163-64 (1990). Still, "the EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. Any such waiver must be strictly construed in favor of the United States." *Ardestani*, 502 U.S. at 137 (citations omitted).

Jaxma sought to recoup its expenses and fees it incurred on appeal because"[a]n agency that conducts an adversary adjudication shall award, to a prevailing party . . . fees and other expenses incurred by the party . . . , unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1); 28 U.S.C. § 2412(d)(1)(A).[8] For a corporation to be eligible for an EAJA award, its net worth cannot exceed $7 million and it cannot have over 500 employees "at the time adversary adjudication was initiated." 5 U.S.C. § 504(b)(1)(B); 7 C.F.R. § 1.184.

The applicant in an EAJA proceeding has the burden of establishing eligibility for attorneys' fees. *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 168 (4th Cir. 2004). *See also Sosebee v. Astrue,* 494 F.3d 583, 589 (7th Cir. 2007) ("[The applicant] had the burden of showing [his eligibility for EAJA fees] by the normal civil standard of proof, which is to say by a preponderance of the evidence."); *Fields v.*

---

[8] EAJA applications submitted to federal courts after the applicant has prevailed in a judicial review of an agency's action, such as in the social security context, are governed by 28 U.S.C. § 2412. Requirements for financial eligibility in 28 U.S.C. § 2412 are identical to those applicable here in 5 U.S.C. § 504, 7 C.F.R. § 1.184(b)(3). *Aageson Grain & Cattle v. U.S. Dept. of Agric.*, 500 F.3d 1038, 1041 (9th Cir. 2007) (explaining the EAJA applies to administrative adjudications through 5 U.S.C. § 504(a)(1)).

*United States*, 64 F.3d 676 (Fed. Cir. 1995) (explaining a plaintiff had to prove by a preponderance of the evidence his net worth, his corporation, and his unincorporated business was under the limits in the EAJA). Although plaintiff retains the burden of establishing eligibility, courts have repeatedly emphasized that because "a request for attorneys' fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), "some informality of proof is appropriate" when deciding to award EAJA fees. *Broaddus*, 380 F.3d at 168 (internal quotations and citation omitted).

An EAJA proceeding before the NAD is governed by regulations codified at 7 C.F.R. §§1.180-1.203 (the Regulations). *See also* 7 C.F.R. § 1.181 (explaining the rules in this subpart describe how to apply for EAJA awards, and the procedures and standards the Department of Agriculture employs to make awards). A corporate applicant like Jaxma must include with its application a "detailed exhibit showing the net worth of the applicant and any affiliates. . . when the proceeding was initiated." 7 C.F.R. § 1.191(a). The Regulations allow the exhibit to "be in any form convenient to the applicant that provides full disclosure of the applicant's and affiliate's assets and liabilities and is sufficient to determine whether the applicant qualifies under the standards of this subpart." *Id.* An "affiliate" under the Regulations, in most circumstances, is "any individual, corporation, or other entity that directly or indirectly owns or controls a majority of the voting shares or other interest . . . ." 7 C.F.R. § 1.184(d)(3). Section 1.191(a) of the Regulations allows an adjudicative officer to require an applicant to file additional information to determine whether it is eligible for an award under the EAJA.

The formula for determining net worth under the EAJA is simple; one must subtract total liabilities from total assets. *Shooting Star Ranch, LLC v. United* States, 230 F.3d 1176, 1178 (10th Cir. 2000) (quoting H.R. Rep. No. 96-1418, at 15 (1980) *reprinted in* 1980 U.S.C.C.A.N. 4984, 4994) (explaining net worth under the EAJA is to be "calculated by subtracting total liabilities from total assets."); *City of Brunswick v. United States*, 849 F.2d 501, 503 (11th Cir. 1988). But the EAJA and the Regulations are silent as to the standard of proof and the quantum of evidence to establish net worth under 7 C.F.R. § 1.191(a). *United States v. 88.88 Acres of Land*, 907 F.2d 106, 108 (9th Cir. 1990). As Tenth Circuit has explained, "Congress clearly intended to grant relief to qualifying parties, [but,] the means by which a claimant establishes qualification is still an evidentiary process." *Shooting Star Ranch, LLC,* 230 F.3d at 1178.

## Analysis

Jaxma raises multiple arguments as to why it believes the Determination was legally insufficient and requests, at a minimum, that the case be remanded to the agency so that it can further amend its EAJA application. The Court will address each of these arguments in turn.

### A. Review of the agency's decision under the APA

My analysis begins with the procedural posture of the case. This is a review of an administrative decision regarding the award of EAJA fees under the APA based on the "whole record" that was before Defendant Wood, the NAD Director, when he made the Determination. 5 U.S.C. § 706, *Volpe*, 401 U.S. at 420. Thus, the Court sits

14

as an "appellate tribunal," as discussed above, *see Brinklys*, 175 F. Supp. 3d at 1349 (additional citations omitted), and addresses the question of whether the administrative record supports the Determination's finding that Jaxma did not meet is burden to prove EAJA eligibility.

The Determination focused solely upon the adjudicative officer's decision that Jaxma did not meet its burden to prove its net worth under the EAJA, A.R. 225-29 therefore, the Court's review is limited to the question of whether the Determination was rational or based on relevant factors (arbitrary and capricious, § 706(2)(A)) and whether there is evidence which a reasonable person would accept to support a conclusion (substantial evidence, § 706(2)(E)). A. R. 227-31; doc. 28 at 12. I find, as explained below, the Determination's conclusion that Jaxma did not meet its burden to prove net worth under 5 U.S.C § 504(b)(1)(B) and 7 C.F.R. § 1.184 (b)(5) is supported by the record, and not arbitrary.

Although the Regulations provide that a net worth exhibit "may be in any form convenient to the applicant[]," that flexibility is not unlimited. 7 C.F.R. § 1.191(a). The only record evidence submitted by Jaxma in support of its net worth were the first and second exhibits. As discussed above, the first exhibit consists of a single document where the general manager declared under penalty of perjury that the assets and liabilities of Jaxma aggregated with its affiliates totaled a net worth of $2,614,848.54 as of the date of filing and were "well under the $7 million cap set forth in 7 C.F.R. § 1.185(b)(5)." A.R. 76. This single document was rejected as insufficient, and the

adjudicative officer reasonably requested that Jaxma provide more fulsome evidence supporting its EAJA application. A.R. 25, 226.

Jaxma then submitted the second exhibit, A.R. 77, which contained two documents. In the first, the same manager, again in a single document, declared under penalty of perjury that assets and liabilities of Jaxma aggregated with its affiliates totaled a net worth of $2,533,272 as of June 27, 2017. A.R. 77. No explanation was provided as to why this net worth estimate differed from the representation from the first exhibit. The second document was a two-sentence, unsworn letter from Jaxma's certified public accountant that stated, "I am the tax preparer for Jaxma Greenhouse Inc. and Shung Kim. Based on their tax return for the period ending June 27, 2017[,] Jaxma Green house has a net worth of $2,088,272 and Shung Kim $445,000 for a total net worth of $2,533,272. A.R. 78. Despite being specifically directed to provide more, no other supporting documentation was provided by Jaxma.

The Regulations provide some clarity as to what an applicant must submit to support a request for fees under EAJA: "a *detailed exhibit* showing the net worth of the applicant and any affiliates[;]" and while the exhibit may be in any form convenient to the applicant, it must provide a "*full disclosure* of the applicant's and its affiliates' assets and liabilities *and* is sufficient to determine whether the applicant qualifies under the standards in this subpart." 7 C.F.R. § 1.191(a) (emphasis added). The circumstances of the matter may inform what is sufficient. *See Fields*, 29 Fed. Cl. at 382 (explaining that often there is no dispute over whether an EAJA applicant meets net worth requirements, therefore, the government usually takes the position the

applicant's affidavit can be considered adequate proof of net worth). The record evidence here supports the NAD's conclusion that Jaxma "only made bare assertions that meets the statutory criteria," A.R. 227, in the face of the adjudicative officer ordering Jaxma to "supply supporting documentation, such as a sworn letter or affidavit from an accountant that includes a list of the applicant's assets and liabilities as of the date it submitted its NAD appeal." A.R. 25, 226.

Jaxma never supplied a "full disclosure of assets and liabilities" in any form, not as a sworn letter or affidavit from its accountant, a listing of its assets and liabilities, nor a balance sheet or any other disclosure mechanism that would aid the NAD in determining Jaxma's net worth. Because of the lack of evidence in the record, and because it was Jaxma's burden to provide the evidence, the NAD's rejection of Jaxma's application was not arbitrary and capricious and was supported by the (lack of) evidence.

The adjudicative officer and the Determination relied on *Fields v. United States*, 29 Fed. Cl. 376. A.R. 71, 229-30. In *Fields*, the plaintiff appealed an adverse administrative decision to the United States Court of Federal Claims. The parties eventually settled, but in the agreement, the parties reserved the right to seek attorneys' fees, and timely filed at EAJA application resulting in another round of litigation. *Fields*, 29 Fed. Cl. at 378-79. The Government argued the plaintiff's application was insufficient because he submitted "a one-page self-serving conclusory narrative affidavit as to the extent of his net worth." *Id.* at 381. The plaintiff argued that the government had not produced evidence that his net worth exceeded the EAJA limits,

so his sworn statement should establish his eligibility. *Id.* The court rejected plaintiff's argument, holding it is the "plaintiff's burden to demonstrably establish, *prima facie*, that he meets the referenced 'net worth limitations.'" *Id.* at 382. The *Fields* court reasoned that "the EAJA is a waiver of sovereign immunity which must be *strictly* construed." *Id.* (emphasis in original) (citation omitted). Thus, "a petitioner requesting fees under the EAJA *must* present sufficient evidence so that his or her net worth may be ascertained and verified by the court." *Id.* (emphasis in original) (citations omitted).

Like Jaxma, the *Fields* court observed that the plaintiff offered no documentary evidence supporting his "self-serving, non-probative affidavit." *Id.* The *Fields* plaintiff later supplemented his application, but unlike Jaxma, he provided more detail: a letter from his accountant which included his tax return, worksheet, and a letter from a bank which included a financial statement. *Id.* at 382-83. Despite the additional evidence, the *Fields* court found the filing to be insufficient because plaintiff did not file "an integrated balance sheet reflecting a systematic analysis of the assets and liabilities of plaintiff establishing his net worth in his individual capacity" nor did the court receive that information regarding his business. *Id.*[9] Therefore, the request for EAJA fees was denied.

---

[9] The Federal Circuit later affirmed the trial court's decision, explaining that the first affidavit filed merely recounted that petitioner "met the eligibility requirements of 28 U.S.C. § 2412(d)(2)(B), but offered no supporting documentary evidence," and was self-serving. *Fields v. United States*, 64 F.3d 676 (Fed. Cir. 1995). As to the second affidavit, which contained additional exhibits, the Federal Circuit again affirmed the district court's holding that this "'hodge-podge' of data purporting to show the general range of his net worth. . . was insufficient because the evidence submitted was fragmentary, lacked specificity, was not

*Fields* is not an outlier. In *Shooting Star Ranch,* the Tenth Circuit held that an unverified and unsworn affidavit from its certified public accountant stating that the plaintiff's net worth was between $1.5 and $1.8 million was insufficient for the plaintiff to carry his burden to establish net worth under the EAJA. 230 F.3d at 1177. The plaintiff was given an opportunity to supplement his request for fees, but failed to provide documentation relevant to net worth. *Id.* The Tenth Circuit explained, "[w]hen challenged as to eligibility for an EAJA award, the party seeking such an award must do more than make a bare assertion that it meets the statutory criteria." *Id.*

Similarly, in *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505 (2003), the government challenged the plaintiff's EAJA application's net worth exhibit, a declaration that recited that the plaintiff's net worth was between 4 and 7 million dollars. *Id.* at 508. The *Lion Raisins* plaintiff provided various materials supporting their application: a tax return that listed retained earnings (but not net worth) and three balance sheets that "purport[ed] to show, respectively, [that] plaintiff's assets, liabilities, and equity . . . . [was] less than $7 million." *Id.* at 511. The Court noted that the balance sheets did not include supporting documentation and found the plaintiff's failure to articulate net worth did not adhere to EAJA's requirements. *Id.* (citations omitted). *See also Doe v. United States*, 54 Fed Cl. 337, 341-42 (2002) (explaining

---

complete, and there was no affirmation that the reported assets and liabilities were total, complete, and accurate." *Id.*

plaintiff's submission of an affidavit and a cashflow work sheet fell short of the "sufficient evidence" to ascertain and verify net worth as directed in *Fields*, 29 Fed. Cl. 376); *Jagers v. FDIC*, No. 10-cv-00956-RPM, 2012 WL 4336172, at *2,*5 (D. Colo. Sept. 12, 2012) (holding that because plaintiff's statements of their net worth, including two declarations, were not supported by a listing of specific assets or liabilities, tax returns, appraisals, or other information, the court could not verify the plaintiff's assets).

Jaxma does not suggest that *Fields* or *Shooting Star* are no longer good law,[10] but instead asks the Court to find other non-binding cases more persuasive, doc. 35 at 3. Cases examining the sufficiency of an EAJA applicant's net worth, or the form of its net worth exhibit, are not uniform in their conclusion, nor is the evidence required to establish eligibility. The sufficiency of the proof depends on the circumstances, such as the nature of the application, the procedural posture of the matter, and the custom in the jurisdiction. *See, e.g. United States v. Heavrin*, 330 F.3d 723, 732-33 (6th Cir. 2003) (affirming the district court's decision that an individual applicant had produced sufficient evidence to conclude his net worth was less than the statutory cap where he submitted an affidavit which provided the "summary calculations on which he based his conclusion." ); *Direct Lineal Descendants of Jack v. Sec. of Interior*, No. 3:13-cv-657, 2015 WL 1926737, *3 (N.D. Nev. Apr. 18, 2015) (accepting plaintiff's individual

---

[10] As Court of Federal Claims and Tenth Circuit cases, respectively, these cases are not binding on this Court.

affidavits attesting to their assets, liabilities, and net worth without additional supporting documentation); *D'Amico ex rel N.L.R.B v. Indus. Union of Marine and Shipbuilding Workers of Am., AFL-CIO*, 630 F. Supp. 919, 922 (D. Md. 1986) (holding that an EAJA application "which indicates eligibility should be sufficient to meet the applicant's burden, absent some at least minimally factually supported argument by the government that the applicant is not eligible.").[11]

Jaxma cites *Broaddus* in support of its position that an affidavit asserting qualifying net worth was sufficient. 380 F.3d 162. However, the applicant documented its assets in greater detail than what was submitted by Jaxma here. The *Broaddus* applicant's "extensive evidentiary proffer" included a sworn affidavit stating that his net worth was less than the cap, a sworn affidavit from his personal accountant, who listed the applicant's assets and liabilities, and a sworn affidavit from a real estate appraiser regarding the value of the plaintiff's property interest. *Id.* at 167. Likewise, in *88.88 Acres of Land*, the Ninth Circuit affirmed the district court's grant of EAJA fees where the applicant submitted financial statements and an accountant made a separate, sworn affidavit that the balance sheets "reflected [the applicant's] 'true and accurate net worth.'" 907 F.2d at 108. The evidentiary offer of its net worth by Jaxma before the NAD was not comparable.

---

[11] The Courts in *Heavrin*, *Direct Lineal Descendants*, and *D'Amico* were not undertaking a review under the APA; instead, they analyzed whether the EAJA application submitted to the federal courts were sufficient under 28 U.S.C. § 2412.

Moreover, whether the evidence submitted accurately reflected Jaxma's true net worth is not the question before the Court; rather the question is whether the Determination is arbitrary and capricious and unsupported by substantial evidence. *Sierra Club v. U.S. Army Corp. of Eng'rs*, 295 F.3d 1209, 1222 (11th Cir. 2002). The administrative record, particularly the scant second exhibit and accountant letter submitted by Jaxma in response to adjudicative officer's request for supporting evidence, was conclusory, did not fully disclose Jaxma's assets and liabilities, and was not sufficient for the NAD to ascertain and verify Jaxma's net worth as is required by the Regulations. 7 C.F.R § 1.191(a). Jaxma did not, for example, list assets and liabilities, submit prior tax returns, balance sheets, or anything which the NAD could have tested or verified Jaxma's conclusions about its EAJA qualifications. And although not necessarily fatal in all circumstances, the two-line letter submitted by the accountant was not sworn to and did not include supporting documentation. Because Jaxma failed to provide probative evidence of the nature requested by "Notice of Further Proceedings Pursuant to 7 C.F.R. § 1.199," A.R. 25-26, the Determination was not arbitrary and capricious and the agency's conclusion is supported by substantial evidence.

## B. Jaxma's impermissible burden-shifting

Jaxma also quarrels with the Determination because Jaxma maintains it satisfied its burden to prove net worth, doc. 28 at 14, particularly where the Risk Agency "fail[ed] to produce any evidence that Jaxma's net worth exceeded the EAJA financial eligibility limitation for corporations." *Id.* at 15 (citing A.R. at 92-156). Jaxma

argues that because the first and second exhibits met the net worth requirement, the burden shifted to the Risk Agency to produce evidence that Jaxma's net worth exceeded the cap set by the EAJA for corporations. Doc. 28 at 14-16. Jaxma cites no binding authority for this burden-shifting upon an applicant's production or that the NAD director should have "weighed the evidence presented by Jaxma against the evidence presented by the [Risk] Agency." Doc. 28 at 16.

To read-in a requirement that the Risk Agency prove that Jaxma's net worth exceeded EAJA requirements would improperly shift the burden from the applicant to agency to prove net worth. Doc. 33 at 13. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004) (contrasting the EAJA's directive that a plaintiff shows his eligibility to receive an award with the requirement in the statute that the plaintiff merely allege the government's position was "not substantially justified."). "Informality of proof," *88.88 Acres of Land*, 907 F.2d at 108, differs from imposing a burden on the government to produce evidence in the face of a regulation squarely placing the burden to establish net worth on the EAJA applicant. *See* 7 C.F.R. § 1.191(a) (emphasis added) (requiring *an applicant*, to provide a detailed exhibit showing his net worth when the proceeding was initiated; and allowing the adjudicative officer to require *an applicant* to file additional information to determine its eligibility).

The Federal Circuit has explicitly rejected Jaxma's argument that an affidavit, unsupported by exhibits or documentation, is enough to prove entitlement to fees under the statute because the government did not put on any evidence. *Fields*, 64 F.3d 676. "The contention of the plaintiff that his affidavit was sufficient because the

23

government had not put on any evidence is unpersuasive, because the burden was on him and not on the government to prove his net worth. The government was not required to prove anything." *Id.*

### C. The Determination was supported by the Agency Record

Jaxma also argues the Court should overturn the Determination because it is based on two facts that it alleges are contradicted by the record. Doc. 28 at 17. First, Jaxma argues Defendant Wood "repeatedly state[ed] that Jaxma refused to provide additional net worth materials in response to the Notice of Further Proceedings[,]" when Jaxma *did* provide additional documentation (the second exhibit and the accountant letter) *Id.* (citing A.R. 228-29). Upon review, A.R. 225-31, I find Jaxma's representation of the Determination unpersuasive. Defendant Wood, to the contrary, acknowledged that Jaxma provided "another written statement from its General Manager and a written statement from its accountant and tax preparer[,]"expressly acknowledging Jaxma's providing additional net worth materials A.R. 226. He explained, however, that Jaxma did not provide any information substantiating the assets, liabilities, and net worth figures attested to in the newly submitted materials. A.R. 226-27. Defendant Wood also approvingly cited the adjudicative officer's finding that Jaxma's did not "provide *supporting documentation* regarding its net worth." A.R. 227 (emphasis added), 229.

The Determination was not based on a factual error; Defendant Wood acknowledged Jaxma submitted additional net worth exhibits; he, however found the additional exhibits insufficient to substantiate or support "the bottom-line amounts

stated." A.R. 230. Thus, Jaxma's argument that the Determination was based on Jaxma's refusal to comply with the adjudicative officer's request, is not supported by the record.

The second error that Jaxma alleges was the Determination's finding that the adjudicative officer improperly exercised her authority under the EAJA "to require that the Applicant supplement its net worth exhibit [specifically] with a list of its assets and liabilities." Doc. 28 at 18. Jaxma, pointing to the Notice of Further Proceedings, A.R. 25, argues that Defendant Wood, in the Determination, read-in a requirement that a list of assets and liabilities must be provided as supporting documentation, instead of an "example of what would constitute acceptable documentation." Doc. 28 at 19. Jaxma maintains that this alleged error "led to the erroneous factual determination that Jaxma ignored a specific request in the Notice of Further Proceedings for a list of assets and liabilities when no such request was made." *Id.* at 20 (citing A.R. 228-30, 248-49).

This argument similarly lacks merit and misstates the record. Upon review, it was not that Jaxma ignored a specific request in the notice that was fatal to its EAJA application, but that the conclusory documentation it submitted was found legally insufficient by both the adjudicative officer and Defendant Wood *See* A.R. 69-73, 228-30, 248-49. The Determination focused on the legal propriety of the adjudicative officer's decision, A.R. 229-30. Defendant Wood recounted that the adjudicative officer cited *Fields*, 29 Fed. Cl. at 382, for the proposition that "when there is a question about eligibility, 'a conclusory affidavit without supporting evidence is inadequate to

establish net worth for EAJA eligibility,' and that the applicant 'must present sufficient evidence so that his or her net worth may be ascertained and verified by the court.'" A.R. 229 (citing A.R. 71). He stated, "the Adjudicative Officer's reliance on the *Fields* case is persuasive[,] and I adopt it as my own," A.R. 229; and rejected the argument that the government had to refute net worth. A.R. 230.

The Determination is not arbitrary, capricious or against the weight of the evidence. Rather, the action is supported by the record and consistent with standards of review set forth by the APA. *Brinklys v. Johnson*, 175 F. Supp. 3d at 2350 (citing *CS-360, LLC v. U.S. Dep't of Veterans Affs.*, 101 F. Supp.3d 29, 32 (D.D.C. 2015)). *See also Universal Camera Corp. v. Nat'l Lab. Rel. Bd.*, 340 U.S. 474, 478 (1951) (explaining in applying the substantial evidence test, the Court cannot "displace the . . . [NAD's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.").[12]

---

[12] In a single sentence on page six of its reply, doc. 35, Jaxma argues its Due Process Rights were violated. Doc. 35 at 6. Upon review of the complaint, Jaxma, as an almost afterthought, alleges that to the extent the NAD "imposed new standards on Jaxma under the EAJA, it violated Jaxma's right to due process of law and is an instance of retroactive rulemaking." Doc 1 at 8. Jaxma, however, did not meaningfully brief this issue as a basis for relief in its motion. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1339, 1342 (11th Cir. 2005) (quotations and citation omitted) ("As we repeatedly have admonished, arguments raised for the first time in reply brief are not properly before a reviewing court."). Further, for the reasons explained in this report and recommendation, I do not find the NAD imposed new standards on Jaxma. The record reflects that Jaxma was given, and took advantage of, multiple opportunities to advocate its position. I find, therefore, Jaxma's right to constitutional due process was not violated.

## D. The Issue of Remand

At a minimum, Jaxma requests the Court order further proceedings before the NAD to allow it to supplement its net worth exhibit, docs. 28 at 20, 35 at 5, and provide a list of assets and liabilities now that it better understands the NAD's requirements. Doc. 28 at 21.

Jaxma cites no authority for such action, particularly considering this Court's finding the Determination was neither arbitrary nor capricious and is supported by substantial evidence. *See generally* doc. 28 at 20-21. Moreover, the cases noted by Jaxma are unavailing because they came before the district court in a different procedural posture. For example, Jaxma cites *Singleton v. Apfel*, 231 F.3d 853, 858 (11th Cir. 2000) for the proposition that courts may permit the filing of supplemental materials for EAJA applications. Doc. 28 at 20-21. In *Singleton*, however, the plaintiff moved for attorney's fees in federal court under the EAJA, 28 U.S.C. § 2412(d). The district court determined that the application was untimely, and thus, that it lacked subject matter jurisdiction. *Id.* at 855. The Eleventh Circuit, conducting a de novo review, held that courts may allow timely EAJA applications to be supplemented. *Singleton* was not a review of agency action under the APA; therefore, *Singleton*'s holding allowing supplementation of timely EAJA applications does not require or permit me to recommend sending the matter back for agency action.[13] *See also*

---

[13] In any event, Jaxma had a chance to supplement its EAJA application before NAD. *See* A.R. 25-26 "Notice of Further Proceedings Pursuant to 7 C.F.R. § 1.199," which directed the parties to submit additional materials to the adjudicative officer on the case.

*Broaddus*, 380 F.3d at 165 (emphasis added) (explaining that a *district court's* alleged legal errors in construing EAJA are reviewed de novo).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Tel. Stations, Inc.*, 556 U.S. 502, 513 (2009). The Court *has not* made a finding that the NAD's actions fall within a category in 5 U.S.C. § 706. Allowing Jaxma to reengage in the administrative proceedings and supplement its net worth exhibit would be an end run around the Court's determination and award equitable relief with no basis in § 706. Because the Determination was a rational conclusion reasonably reached and reasonably explained based on the administrative record and supported by substantial evidence in the record, I recommend denying Jaxma's motion for summary judgment and entering judgment for the defendants.

### Recommendation[14]

I respectfully **recommend**:

1. Jaxma Greenhouses, Inc.'s Motion for Summary Judgment, doc. 28, be **denied;**

---

[14]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

2. The Clerk of Court be directed to enter **judgment** in favor of Defendants Thomas J. Vilsack and Frank M. Wood, and against Jaxma;[15] and

3. The Clerk of court be further directed to terminate any remaining pending motions and deadlines as moot and close the file.

   **Entered** in Jacksonville, Florida, on July 11, 2022.

          LAURA LOTHMAN LAMBERT
          United States Magistrate Judge

c:
The Honorable Marcia Morales Howard
Kyesha Mapp, Assistant United States Attorney
Bryan K. Mickler, Esquire

---

[15] Defendants, as directed by the case management and scheduling order, doc. 22, filed a response to Jaxma's Motion for Summary Judgment; a cross-motion for summary judgment was not contemplated by that order. Because the issues in this case have been fully briefed as ordered by the district court, I find it appropriate to recommend entering judgment in favor of the defendants.